HORACE P. WHEELER, DEFENDANT IN ERROR, v. SOUTH ORANGE AND MAPLEWOOD TRACTION COMPANY, PLAINTIFF IN ERROR.

Argued March 2, 1904—Decided July 8, 1904.

Upon the trial of an action by a passenger to recover for injuries sustained by contact with a trolley pole while walking upon the running-board of a moving car, the evidence tended to show the following facts: The trolley poles stood between the tracks at intervals of one hundred and twenty-five feet and were distant from the outside of the car when passing one foot and eight inches; ordinarily the side next to the poles was closed by a movable bar and wire grating so that the entrance and exit of passengers would be away from the poles; for several weeks, a bridge being out of order, the car was switched to the opposite track, and ran some distance without a change of the bar and grating; the plaintiff was a frequent traveler upon the car and was more or less familiar with the situation; on the occasion in question he had stepped upon the rear platform, and the seat being occupied, stood against the dashboard; the conductor had passed along the running-board collecting fares, in safety, while the car was moving, and when collecting plaintiff's fare invited him to "go in the car and sit down;" as it approached an intersecting street the car slowed down and had stopped, or almost stopped, when plaintiff stepped down upon the running-board and was about to take a seat inside, when, by a sudden forward movement of the car, he lost his balance, collided with one of the poles and fell. Motion to nonsuit and direct a verdict on the grounds of contributory negligence and obvious risk were refused. Upon review it was held that the questions were for the jury, and that there was no error in the ruling.

On error to the Essex Circuit, upon a judgment on a verdict in a cause tried before Judge Adams and a jury.

For the plaintiff in error, *William Reed Howe* and *Gilbert Collins.*

For the defendant in error, *Simon J. Klauber* and *Nathan C. Horner.*

The opinion of the court was delivered by

HENDRICKSON, J.   A reversal of the judgment is sought in this case on two grounds—*first,* for refusal of the trial court to nonsuit and to direct a verdict; *second,* for a refusal to charge as requested.   This action arose out of the plaintiff's injury while a passenger upon a trolley car.   The evidence on the part of the plaintiff tended to show that he was in the act of passing from the rear platform of an open car on which he was riding to the rear seat of the car; that in doing so he had stepped upon the running-board, and before he could enter a sudden movement of the car forward caused him to lose his balance, and while attempting to regain it he was struck by contact with a trolley pole standing between the double tracks of the company and thrown upon the ground, receiving the injuries complained of.   This refusal to withdraw the case from the jury, it is urged, was erroneous, because it is alleged the plaintiff himself was negligent, and that his conduct was such that he assumed the risk.

To sustain this proposition it must be shown that the negligence of the plaintiff so clearly appears that it was a question for the court and not for the jury.   The evidence was uncontradicted that the railway in question was operated by electricity, the wires being strung upon poles erected between the two tracks and standing about one hundred and twenty-five feet apart; that the cars were usually so operated that the entry and exit of passengers would be upon the side of the car away from the poles, the other side next to the poles being closed by the dropping of the bar and grating; that the plaintiff, who was a carpenter, had been working at South Orange, and about half-past six o'clock in the evening entered the car at South Orange avenue to go home to West Orange; that the car was going north, and in doing so ordinarily would take the easterly track, but a bridge being up and under repairs the car took the southbound or westerly track for part of the distance, as it had been doing for several weeks; that was done without any change being made in the position of the bar and grating upon either side, so

that upon that part of the trip the side of the car open for the entry and exit of passengers was toward the trolley poles; that the car stopped a few seconds at the avenue named to allow plaintiff and his brother to enter the car, which they did from the side next to the poles, the plaintiff stepping upon the rear platform and the brother taking the second seat in the car from the rear; that the plaintiff, after the car started, remained standing on the platform, against the dashboard, facing in the direction the car was going, until the car had gone a distance of about one-quarter of a mile and was nearing Meade street; that the distance between the side of the car and the poles was one foot and eight inches and the distance between the outer edge of the running-board and the poles was one foot. From this point in the testimony there was some conflict in the evidence; but in reviewing a refusal to nonsuit or to direct a verdict the evidence must be regarded that is the more favorable to the plaintiff, for the court cannot consider upon error the weight of the testimony. *Traction Company* v. *Thalheimer,* 30 *Vroom* 474. We may also look at the testimony taken in the cause after the refusal to nonsuit to see whether the later evidence would cure any possible defect in the plaintiff's evidence when he rested.

There was further evidence tending to show that there was a seat on the rear platform facing backward, which was occupied by men sitting there and with dinner pails; that the plaintiff for that reason remained standing until the car approached Meade street; that the conductor had passed from the front to the rear of the car along the running-board while the car was moving and had taken the fares from the passengers upon the rear platform, saying to the plaintiff at the time, "Go in the car and sit down;" that as the car slowed up and was almost stopped at Meade street, as the plaintiff said, or had stopped, as the brother and others testified, the plaintiff, taking hold of a bar at the end of the rear seat with the left hand, stepped with his left foot on the running-board and was about to step into a seat when the car started with a sudden jerk, whereby he lost his bal-

ance and was struck with a dark object, ahead which he supposed must have been a pole; that he would have had room enough on the running-board if the car had not thrown him out so that he could not pull himself in in time. It also appeared in the case that the plaintiff had been traveling over this line every day for several weeks with the car open, as this was for part of the journey, on the side next to the poles.

The defendant contends that the plaintiff, in doing what he did, was acting with full knowledge of the danger and therefore assumed an obvious risk which should bar a recovery. The case of *Flynn* v. *Consolidated Traction Co.*, 38 *Vroom* 546, is cited as giving support to the proposition thus suggested. In that case the passenger was upon the running-board, looking back and leaning outwards so as to see the conductor and signal him to stop the car, it having been run by the usual place for alighting. A nonsuit by the court below was there sustained, not upon the ground of negligence imputed as the result of assuming an obvious risk, but on the ground that he was clearly guilty of contributory negligence in failing to observe the passing vehicle that struck him, which, if he had used observation, he must have seen and could have avoided. While the proposition contended for would doubtless be sustained where a plaintiff had thus exposed himself to a danger that was imminent and was known by the plaintiff to be such at the time, yet the present case does not present the features here suggested. The use of the running-board in that way did not appear to be absolutely hazardous. There was a space of one foot and eight inches between the car and the poles, and the case shows that the conductor used the running-board in safety while collecting fares. The plaintiff had seen this. It may fairly be inferred from the evidence that the plaintiff would have passed to a seat in the car with safety but for the sudden jerk whereby, he says, he lost his balance. Nor does it clearly appear that the plaintiff had full knowledge of the danger. He may have observed the proximity of the poles in a general way as he rode upon the cars, but that he appreciated the fact that the proximity

was such as might be dangerous to persons standing or walk-ing upon the running-board is not so clear.

Another factor to be observed upon the question of the plaintiff's negligence is that he was invited by the conductor to take a seat in the car. He was, therefore, in the exercise of a right that belonged to him as a passenger when he at-tempted to go upon the running-board to find a seat in the car. Such acts are not ordinarily regarded as negligent *per se*. *Scott* v. *Bergen County Traction Co.,* 34 *Vroom* 407; *Traction Company* v. *Gardner,* 31 *Id.* 571; *Paganini* v. *North Jersey Street Railway Co.,* 40 *Id.* 60.

Another circumstance developed by the evidence is that the plaintiff waited before seeking a seat in this way until the car had slowed up on its approach to Meade street, where it was accustomed to stop, and had almost, if it had not actually, stopped when he started to do so.

We think under the circumstances here outlined, the ques-tion of contributory negligence was at least debatable and hence proper to be submitted to the jury. In the case of *Coleman* v. *Second Avenue Railroad Co.,* 114 *N. Y.* 609, de-decided in the New York Court of Appeals, which was cited by defendant's counsel upon another point, support may be found for the view here expressed. The facts were very similar, the principal difference being that the passenger, in going along the running-board to seek a seat, was injured by his head striking against one of the columns supporting the elevated railroad above. After stating in the opinion that if, without reasonable cause, the passengers upon a street rail-way leave the car or place themselves on the outside of it when in motion, they assume the hazards of so doing, the learned judge proceeds to say: "The cause which may justify a pas-senger, without the imputation of fault on his part as against the carrier, in leaving his seat and going outside the car and occupying, temporarily or otherwise, a position there while it is in motion, must be dependent upon the occasion and the circumstances which induce or impel him to do so." He also said in the opinion "whether the plaintiff was justified

in leaving his seat and going outside the car to seek another seat in it was a question of fact for the jury."

We think there was no error in the refusal to take the case from the jury. Was there error in the court's refusal to charge as requested? The following were the requests to charge:

1. It was not negligence on the part of defendant to run cars on left of poles if plaintiff was familiar with the fact.

2. It was not negligence on the part of defendant to have the run-board down.

3. It was negligence on part of plaintiff to step on run-board when car was in motion, he not being about to alight, unless with the knowledge of conductor.

4. It was negligence for passenger to leave position of safety and put himself in peril without advising the conductor.

5. Plaintiff having knowledge of existence of peculiar danger was chargeable with special care and caution.

These requests were denied except as already charged. We think the subject-matter of these requests was fairly covered by the charge as presented. It must be observed that in all the requests except the last the trial judge was requested to charge as to whether certain specific acts proven, standing alone, would or would not constitute negligence. It is a settled rule that reasonable care and its lack or negligence must, in the main, depend upon the facts of each particular case. 21 *Am. & Eng. Encycl. L.* 465; *Central Railroad Co. v. Moore,* 4 *Zab.* 824. The trial judge very properly presented in his charge, as the gist of the action, the several breaches of duty relied upon for a recovery, to wit, the failure to provide safe and proper entrances and exits from the car, to furnish guards and other proper appliances, and the careless operation of the car under the circumstances, and left it to the jury to say whether, under all the circumstances, the defendant was negligent. It is apparent that the quality of such acts, whether negligent or not, would often depend upon other acts and conditions in the group to be

considered. It would therefore be improper to ask the court to characterize as negligent or not particular acts apart from the others, from the whole of which it became the duty of the jury to say whether the defendant was negligent. With reference to the question of the defendant's negligence, the judge said, among other things: "Now, you may consider all the circumstances—the location of the pole with reference to the line of the car; the arrangement of the car. * * *. Was there a lurch, either of a violent character or of a usual character? It has been held that a lurch of an unusual or violent character, such as cannot be reasonably anticipated by a passenger, is of itself evidence of negligence. * * * Now, taking all these facts together, what do you think the weight of the evidence is as to the question whether the defendant was negligent? Did the company exercise a high degree of care to protect this passenger from injury? If it did, it performed its whole duty, and your verdict should be for the defendant. If it did not do its duty in this respect and the accident resulted from its breach of duty, then your verdict should be for the plaintiff, unless he himself contributed by his negligence to his own injury."

Upon the question of contributory negligence, the trial judge said, among other things: "Was the risk of colliding with the pole a danger obvious or that should have been obvious to the plaintiff? Was it a danger that he knew of or should have known of as a man of ordinary, reasonable prudence (and that is all that was required of him), and which he recklessly incurred? Did he take the risk? If he did, he cannot recover."

We may say, with regard to the last request, that while it is true that a higher degree of care may be required in the face of an obvious danger, still the recognized doctrine is that whatever may be the relation of the parties or the likelihood of danger, reasonable care, in the light of the circumstances, is all that is required. 21 *Am. & Eng. Encycl. L.* (2d ed.) 495. The trial judge called the jury's particular attention to the features of danger that attended upon the

plaintiff's attempt to enter the car, and instructed them if the plaintiff was negligent under the circumstances, and his negligence contributed to the accident which caused his injury, he could not recover. This we think amounts to a substantial compliance with the request, and that there was no error in refusing to charge otherwise than had already been charged. The result is that the judgment below will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDEN-BURGH, VROOM, GREEN. 11.

*For reversal*—None.